AUSAs: John Sarlitto; Samantha Briggs

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RAYMOND ELDERS,<br><br>Defendant. | 26 mj 1087<br>**COMPLAINT**<br><br>Violations of 18 U.S.C. §§ 842(i);<br>922(g)(1); 2332a(a)(2); and<br>26 U.S.C. §§ 5822; 5861(d); 5861(f);<br>5871<br><br>COUNTY OF OFFENSE:<br>WESTCHESTER |

SOUTHERN DISTRICT OF NEW YORK, ss.:

DONALD C. SPIECE, III, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

## COUNT ONE
### (Use of a Weapon of Mass Destruction)

1.     From at least on or about June 18, 2025 through on or about March 30, 2026, in the Southern District of New York and elsewhere, RAYMOND ELDERS, the defendant, acting without lawful authority, knowingly used, threatened, and attempted to use, a weapon of mass destruction—namely, a destructive device as defined by 18 U.S.C. § 921—against persons and property within the United States, and (i) the mail and facilities of interstate and foreign commerce were used in furtherance of the offense, (ii) such property was used in an activity that affects interstate and foreign commerce, (iii) the perpetrator traveled in interstate and foreign commerce in furtherance of the offense, and (iv) the offense and the results of the offense affected interstate and foreign commerce, to wit, ELDERS possessed and detonated multiple suspected improvised explosive devices in the vicinity of Odell Avenue in White Plains, New York.

(Title 18, United States Code, Sections 2332a(a)(2).)

## COUNT TWO
### (Receipt and Possession of Explosives After a Felony Conviction)

2.     On or about March 30, 2026, in the Southern District of New York and elsewhere, RAYMOND ELDERS, the defendant, knowing he had previously been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, shipped and transported an explosive in and affecting interstate and foreign commerce and received and possessed an explosive which had been shipped and transported in and affecting interstate and foreign commerce, to wit, ELDERS possessed at least approximately 25 suspected improvised explosive devices at his residence on or near Odell Avenue in White Plains, New York.

(Title 18, United States Code, Section 842(i)(1).)

## COUNT THREE
### (Possession of Destructive Devices After a Felony Conviction)

3.     On or about March 30, 2026, in the Southern District of New York and elsewhere, RAYMOND ELDERS, the defendant, knowing he had previously been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, knowingly possessed a firearm, namely, a destructive device, to wit, ELDERS possessed at least approximately 25 suspected improvised explosive devices at his residence on or near Odell Avenue in White Plains, New York, and such suspected improvised explosive devices were in and affecting interstate commerce.

(Title 18, United States Code, Section 922(g)(1).)

## COUNT FOUR
### (Unlawful Possession of Destructive Devices)

4.     On or about March 30, 2026, in the Southern District of New York and elsewhere, RAYMOND ELDERS, the defendant, unlawfully and knowingly possessed a firearm, namely, a destructive device, as described in Title 26, United States Code, Section 5845(a)(8) and (f), not registered to the defendant in the National Firearms Registration and Transfer Record.

(Title 26, United States Code, Sections 5861(d) and 5871;
Title 18, United States Code, Section 2.)

## COUNT FIVE
### (Unlawful Manufacture of Destructive Devices)

5.     From at least in or about June 18, 2025 through on or about March 30, 2026, in the Southern District of New York and elsewhere, RAYMOND ELDERS, the defendant, knowingly did make firearms and did aid and abet the making of firearms, namely, destructive devices, as defined in Title 26, United States Code, Sections 5485(a)(8) and 5485(f)(1), to wit, ELDERS manufactured at least approximately 25 suspected improvised explosive devices at his residence on or near Odell Avenue in White Plains, New York.

(Title 26, United States Code, Sections 5822, 5861(f), and 5871;
Title 18, United States Code, Section 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

6.     I have been a Special Agent with the FBI since February 2023, and I am currently assigned to the Westchester County Safe Streets Task Force. Previously, from 2023 to 2026, I was assigned to the FBI New York Joint Terrorism Task Force. While employed by the FBI, I have conducted and participated in investigations of criminal activity, including violent criminal activity. I have training and experience in numerous areas of criminal investigations and investigatory procedure.

2

7.      I have been personally involved in the investigation of this matter. This affidavit is based in part upon my training and experience, my conversations with other law enforcement officers and others, and my examination of correspondence, reports, video footage, and other records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts I have learned during my investigation. Where the contents of documents or recordings and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise noted.

## ELDERS DETONATES MULTIPLE SUSPECTED IMPROVISED EXPLOSIVE DEVICES ON HIS OWN RESIDENTIAL STREET IN WHITE PLAINS

8.      Based on my discussions with law enforcement officers, including officers of the White Plains Police Department ("WPPD"), my examination of reports and records, my review of video surveillance footage, my interviews of witnesses, and my participation in this investigation, I have learned the following, without limitation and in substance and in part, regarding reports of anomalous explosions on or near Odell Avenue in White Plains, New York, and the law enforcement investigation that followed:

a.  On or about March 30, 2026, in the early morning hours, multiple individuals residing on or near Odell Avenue in White Plains placed emergency calls reporting the sound of loud explosions outside their residences.  One such individual ("Witness-1") reported a loud explosion at approximately 4:28 a.m., and placed a second 911 call at approximately 5:28 a.m. to report another, similar explosion.  Another individual ("Witness-2") placed a 911 call at approximately 5:28 a.m. to relay, in substance and in part, that she had just heard one loud explosion, had heard another approximately an hour earlier, and had been hearing similar explosions in the vicinity of her residence for approximately several weeks.

b.  A WPPD officer responding to the multiple 911 calls placed at or around 5:28 a.m. was directed by another witness ("Witness-3") to the vicinity of a brick multifamily apartment residence located at or near an address on Odell Avenue (the "Odell Avenue Address").  Near the Odell Avenue Address, Officer-1 smelled an acrid, burning odor.  On the front steps of the Odell Avenue Address, Officer-1 identified what appeared to be a potential suspected improvised explosive device, *i.e.*, a pipe bomb.[1] A photograph of the potential pipe bomb is below:

---

[1] Subsequent analysis by FBI evidence recovery personnel confirmed that the object consisted of a piece of polyvinyl chloride ("PVC") piping with protruding fuse material.



c. Shortly after identifying the potential pipe bomb, Officer-1 requested additional support from law enforcement units specialized in explosives response activities and entered the common areas of the Odell Avenue Address. In the course of Officer-1's protective sweep of the common areas of the Odell Avenue Address, RAYMOND ELDERS, the defendant, emerged from an apartment unit in the Odell Avenue Address (the "Apartment"). Law enforcement personnel observed that ELDERS's hands were darkened by a blueish-black chemical residue, and that ELDERS was holding a lighter. ELDERS and another individual present with ELDERS in the Apartment ("Male-1") were later detained by the WPPD for questioning.

d. In the course of their continued investigation, WPPD and the FBI obtained and reviewed records of video surveillance showing the exterior of the Odell Avenue Address on or about March 30, 2026. In particular, I am aware of a video recording capturing, in sum and substance, a male individual appear to light and lob an object onto Odell Avenue during the early morning hours on or about March 30, 2026, before retreating into the Odell Avenue Address. The surveillance video records the object detonate in a large explosion approximately 22 seconds after it was tossed. Excerpts from this recording are reproduced below:

 

*The suspect lights an object and tosses it onto Odell Avenue*    *The suspect returns to the Odell Avenue Address*

4



*The object detonates on Odell Avenue.*

e.    In the course of their continued investigation, WPPD and the FBI also obtained and reviewed records of video surveillance showing the exterior of another residential premises located near the Odell Avenue Address on or about on or about March 18, 2026 at approximately 4:22 p.m., which captures an individual consistent with the appearance of RAYMOND ELDERS, the defendant, light and lob an apparent suspected improvised explosive device onto Odell Avenue before fleeing on foot.  The surveillance video captures the sound of a detonation approximately five seconds after the object was tossed. Excerpts from this recording are reproduced below:



*The suspect tosses a smoking object onto Odell Avenue.*

5



*The suspect flees on Odell Avenue.*

f. On or about March 30, 2026, at approximately 9:20 a.m., WPPD officers interviewed a female resident of a premises located near Odell Avenue ("Witness-4"), who made the following statements, without limitation and in substance and in part

i. Witness-4 has heard approximately 10 loud booms in the vicinity of Odell Avenue over the course of approximately the last month.

ii. On at least three such prior occasions, Witness-4 has seen an elderly white male with a bald head in close proximity to these booms, and has seen that person enter and exit the Odell Avenue Address before and after the events.

iii. On one such prior occasion, Witness-4 heard a large boom and subsequently observed a FedEx driver, whose FedEx truck was parked in the vicinity of the Odell Avenue Address, arguing with the same elderly white male she had previously observed. Witness-4 saw the elderly white male run away from the FedEx driver into the Odell Avenue Address.

iv. On or about March 30, 2026, at approximately 4:00 a.m., Witness-4 saw the same individual she had seen on the prior occasions. This time, Witness-4 observed the individual hold and light an unknown object in the middle of the street and throw that object toward another residence on Odell Avenue, in an area blocked off as a worksite by Con Edison. Witness-4 observed the object emit "big sparks" and observed the individual run back into the Odell Avenue Address. Witness-4 did not observe or hear this object explode.

v. Approximately 20 minutes later, Witness-4 saw the same individual light and throw another object, this time toward a different residence located on Odell Avenue, and again run back into the Odell Avenue Address. Witness-4 heard a "loud explosion" while the individual was returning to the Odell Avenue Address.

6

vi. Witness-4 emphasized, in sum and substance, that the unexplained explosions on or near Odell Avenue and Osborne Street have left residents in fear.

g. Residents of homes on or near Odell Avenue had made previous reports to the WPPD regarding anomalous activity consistent with the detonation of suspected improvised explosive devices. For example, and without limitation, I have reviewed the following WPPD case reports:

i. A WPPD case report dated on or about March 10, 2026, in which officers responded to approximately five emergency calls from individuals who reported observing a loud bang and flash of light in the vicinity of Odell Avenue and Osborne Street. The responding officers were unable to determine the origin of the noise at that time.

ii. A WPPD case report dated on or about June 18, 2025, in which officers were dispatched to the Odell Avenue Address after reports of a fight in the entry hallway. Upon arrival, officers were informed by bystanders that they had heard a loud bang that sounded like a firework outside, and when they left their homes to investigate, saw two men arguing in the foyer of the Odell Avenue Address. The WPPD case report recorded that one of those two men was RAYMOND ELDERS, the defendant.

## ELDERS AND MALE-1 MAKE STATEMENTS TO LAW ENFORCEMENT

9. From my participation in this investigation, I am aware that, after being detained for questioning by WPPD, both RAYMOND ELDERS, the defendant, and Male-1 made *Mirandized* statements to law enforcement. In substance and in part, and without limitation, I understand that Male-1 made the following *Mirandized* statements:

a. Male-1 identified himself as a friend of RAYMOND ELDERS, the defendant, who occasionally resides with ELDERS at ELDERS' apartment, *i.e.*, the Apartment in the Odell Avenue Address.

b. Male-1 stated that ELDERS was responsible for the manufacture and detonation of multiple explosive devices in the vicinity of the Odell Avenue Address on or about March 30, 2026. Male-1 has observed ELDERS assemble multiple such explosive devices in the living room of ELDERS' residence at the Odell Avenue Address, while sitting on the couch.

c. Male-1 is aware that ELDERS has a purple suitcase in ELDERS' bedroom at the Odell Avenue Address, in which ELDERS stores supplies for making suspected improvised explosive devices, including tubing and wiring, wicks, and chemicals.

d. Male-1 is aware that ELDERS discusses bomb-making on the internet with others and stated, in sum and substance, that there will be an "internet paper trail" for the defendant's bomb-making activities.

10. In substance and in part, and without limitation, I understand that RAYMOND ELDERS, the defendant, made the following *Mirandized* statements:

7

a. ELDERS confirmed that he resides in the Apartment at the Odell Avenue Address.

b. ELDERS denied that he had manufactured or detonated suspected improvised explosive devices in the vicinity of the Odell Avenue Address.

c. Although he denied manufacturing or detonating suspected improvised explosive devices in the vicinity of the Odell Avenue Address, ELDERS informed law enforcement that he had assembled an explosive device in the past. Namely, when he was a teenager, ELDERS claimed that he had constructed an explosive from an aluminum canister filled with shotgun shells and employed what ELDERS described as a "blockbuster fuse." ELDERS discussed the operation of "blockbuster fuses" with law enforcement in some detail, and recounted that the device he built had detonated prematurely due to a fuse malfunction, though ELDERS had not been injured.

d. ELDERS informed law enforcement that he has previously owned approximately 150 firearms and was knowledgeable about firearms, but that he no longer possessed those firearms following a felony conviction resulting from driving while intoxicated.

11. From my review of court and law enforcement records, I am aware that RAYMOND ELDERS, the defendant, was convicted upon a plea of guilty in Westchester County Court on or about July 22, 2016 of the Class D felony of driving while intoxicated in violation of New York Vehicle and Traffic Law Section 1192(2), an offense punishable by a term of imprisonment of up to seven years, and was sentenced to a term of imprisonment of one year.

## A SEARCH OF ELDERS'S APARTMENT
## RECOVERS NUMEROUS SUSPECTED IMPROVISED EXPLOSIVE DEVICES

12. On or about March 30, 2026, law enforcement obtained a warrant to search the residence of the defendant, RAYMOND ELDERS, *i.e.*, the Apartment at the Odell Avenue Address. From my participation in that search and my discussions with other law enforcement officers, I am aware that the law enforcement personnel identified and recovered, among other evidence of the charged offenses, at least approximately 25 apparent additional suspected improvised explosive devices from various locations in the defendant's apartment and the premises of the Odell Avenue Address (the "Devices"). A photograph of certain of the Devices and related components recovered by the FBI is below:



13.     In the course of the search of ELDERS' apartment, the FBI secured the Devices for review by an FBI Special Agent Bomb Technician ("SABT").  From my discussions with the SABT and other law enforcement personnel, and without limitation, I understand the SABT's preliminary review identified the following Devices:

a.     Device-1 appeared to be a PVC pipe with a PVC cap on both ends and two pieces of suspected fuse protruding from it. Device-1 was rendered safe, and a suspected powder was located inside the pipe. A thermal susceptibility test was performed on a sample of the suspected powder, which reacted consistent with energetic material.

i.     Also discovered at the Apartment were various items visually consistent with the apparent construction of Device-1. The visually consistent items included suspected PVC pipe, one with a single end cap, suspected powder, and fuse attached to the body of the pipe. This item did not have a second end cap in place. Another item visually consistent with PVC pipe, fuse and a single end cap was also located. This item did not have suspected powder in the PVC pipe and did not have a second end cap in place.

b.     Device-2 appeared to be suspected cardboard tubing with additional cardboard and glue-like substance plugging each end of the tube. A suspected fuse appeared to be inserted into the body of the device. This suspected fuse appeared to be charred.  Another item, Device-3, appeared visually consistent with Device-2.

c.     Device-4 is described as approximately 10 items visually consistent with Device-2 were bundled together with what appeared to be clear tape. It appeared that the fuse from each smaller item was connected to a larger main fuse.

d.     Similarly, Device-5 is described as approximately three items visually consistent with Device-2 which were bundled together with what appeared to be fiber tape. Protruding from the body of Device-5 was a suspected fuse.

14.     The FBI has conducted a preliminary assessment of Device-1 and the FBI's preliminary assessment is that Device-1 constitutes a destructive device, as defined in 18 U.S.C. § 921(a)(4)(A). The FBI's review of the Devices is ongoing.

15.     In the course of the search of ELDERS's apartment, the FBI recovered a one-pound bag of commercial-grade sulphur with manufacturer's logo and markings indicating that it originated in or around Decatur, Alabama. I understand from discussions with the SABT that sulphur of this sort is a component of the black powder identified by the FBI as an explosive contained in the Devices.

16.     Based on law enforcement agents' review of the Bureau of Alcohol, Tobacco, and Firearms' Federal Licensing System, I have learned that there are no firearms, including destructive devices, that are registered to RAYMOND ELDERS, the defendant, in the National Firearms Registration and Transfer Record.

WHEREFORE, I respectfully request that RAYMOND ELDERS, the defendant, be imprisoned or bailed, as the case may be.

_____
DONALD C. SPIECE, III
Special Agent
Federal Bureau of Investigation

Sworn to before me this 31st day of March 2026.

_____
THE HONORABLE JUDITH C. McCARTHY
Chief United States Magistrate Judge
Southern District of New York

10